[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT
I
FACTUAL BACKGROUND
This action began in 1987 as an effort by the plaintiff Connecticut National Bank (hereinafter "CNB") to foreclose on certain property belonging to the defendants Julius and Dora Rytman. Since then, the case has undergone something akin to metastasis. The original defendants filed an answer plus numerous special defenses and counterclaims. Several other Rytman-related entities moved for and were granted permission to join the action as parties defendant. All the defendants, collectively known as "the Rytmans" for purposes of this Memorandum of Decision, then moved for and were granted permission to cite in numerous additional parties, including Kofkoff Egg Farm Limited Partnership, Samuel Kofkoff, Colchester Foods, Inc., Robert Kofkoff, Joseph H. Fortin, Fitchville Realty, Milton L. Jacobson, Glenn M. Gordon, Brown, Jacobson, Jewett and Laudone, P.C., and Norwich Savings Society. The Rytmans then filed cross complaints against these third-party defendants.
The course of this litigation has been long and torturous, with the more than 950 separate pleadings filed to date occupying 47 file folders and some nine linear feet of shelf space. There have been numerous revisions of and CT Page 10810 amendments to the cross complaints and counterclaims filed by the Rytmans, and the parties report that dozens of depositions have been taken. Virtually no issue or claim has gone uncontested.
While the instant case was pending, the Rytmans also filed several other cases, including Rytman v. ColchesterFoods, Inc., Docket No. CV-87-057527, Rytman v. Jacobson, Docket No. CV-90-0516800, and Julius Rytman, et al v. KofkoffEgg Farm Limited Partnership at [et] al, Return Date December 31, 1991. The last of these filings alleged violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec 1962. The voluminous factual allegations of this civil RICO complaint[1], occupying 29 pages and comprising 130 single-spaced subparagraphs numbered 10-a through 10-zzzzz, are substantially the same as allegations contained in the Rytmans' substituted counterclaim and in most of the counts of their amended cross complaint.[2]
The defendants in the Federal Civil RICO action (all but two of whom[3] are named as defendants in the Rytmans' cross complaints and/or counterclaims) were successful in having the RICO action removed to Federal District Court, where it became Docket No. 2:91CV01146 (PCD). There they each filed motions aimed at summary judgment (Norwich Savings Society) or dismissal for failure to state a claim upon which relief could be granted (all other defendants). On August 31, 1992, the District Court, Dorsey, J., granted those motions, and judgment was entered dismissing the action on September 9, 1992. That decision was affirmed on appeal by the United States Court of Appeals for the Second Circuit on June 21, 1993 (Docket Nos. 93-7061 and 93-7177). The United States Supreme Court denied certiorari as well as the Rytmans' motion for rehearing.
The plaintiff Bank and all the other defendants named in the Rytmans' substituted counterclaim and amended cross complaints (hereinafter the "Movants") have now moved for summary judgment based on the doctrine of res judicata. They assert that all material issues have now been determined adversely to the Rytmans and that no material issues remain in dispute as to the counterclaim and cross complaint. The Rytmans resist, claiming, inter alia, that the RICO case and this one are distinct such that the decision as to the one is not res judicata as to the other, and raising several CT Page 10811 procedural objections as well. Before turning to the merits of the summary judgment motions, it is first necessary to address the procedural issues.
 II
PROCEDURAL ISSUES
A. Whether Summary Judgment is the Appropriate Vehicle forAsserting the Defense of Res Judicata
Summary judgment muse be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book § 384; Telesco v. Telesco, 187 Conn. 715,447 A.2d 752 (1982); Yanow v. v. Teal Industries, Inc., 178 Conn. 262,422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. United Oil Co.v. Stamford Urban Redevelopment Commission, 158 Conn. 364,260 A.2d 596 (1969). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v.Gurney, 168 Conn. 431, 362 A.2d 857 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 273 A.2d 716
(1970); Dorazio v. M.B. Foster Electronic Co., 157 Conn. 226,253 A.2d 22 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81,595 A.2d 334 (1980).
Because res judicata may be dispositive of a claim, summary judgment is considered the appropriate vehicle for asserting such a defense. Jackson v. R.G. Whipple, Inc.,225 Conn. 705, 627 A.2d 374 (1993); Zizka v. Water PollutionControl Authority, 195 Conn. 682, 687, 490 A.2d 509 (1985);Covenant Home, Inc. v. Town of Cromwell, 4 C.S.C.R. 26 (1989).
B. Whether Res Judicata is Applicable to a Situation in Whichthe Decided Case was Filed After the Case to Which ResJudicata is Sought to be Applied.
CT Page 10812
Rytman claims that because CNB v. Rytman predates Rytmanv. Kofkoff Egg Farm Limited Partnership, res judicata is inapplicable. This is not the law.
"For the purposes of res judicata, the effective date of the prior judgment is the date of its rendition, without regard to the date of the commencement of the action in which it is rendered or the action in which it is to be given effect." Jackson v. Aetna Life Insurance Company, No. CV89-0364362, Judicial District of Hartford/New Britain at Hartford, 1991 WL 135141 (July 9, 1991), (citing Restatement (Second), Judgments Sec. 14). "A decree may be relied upon as res judicata although it is rendered after initiation of proceedings in which the bar is then asserted." DiMauro v.Pavia, et al, 492 F. Sup. 1051, 1060 (D. Conn. 1979), citingPrincess Lida v. Thompson, 305 U.S. 456, 59 S.Ct. 275,83 L.Ed. 285 (1939).
In short, the fact that this case predates the filing of the case whose dismissal is relied upon in asserting the defense of res judicata is not fatal to that defense.
C. Whether Judgments Pursuant to Federal Rules 12(b)(6)(Failure to State a Claim on Which Relief May Be Granted) and56 (Summary Judgment) are "Judgments On the Merits"
The court in ruling on a 12(b)(6) motion is required to accept as true all facts pleaded in the complaint and to construe the complaint liberally. Miree v. DeKalb County,433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); see 2A J. Moore, Federal Practice (2d Ed.) 12.07 [2.-5]. Because no facts are actually found, but are merely accepted as true for purposes of such a motion, the Rytmans claim that the District Court judgment dismissing the removed RICO complaint was other than "on the merits." This, however, is not our law.
"[J]udgments under Rule 12(b)(6) are on the merits, with res judicata effects. . . ." The Exchange National Bank ofChicago v. Touche Ross Co., 544 F.2d 1126, 1131 (2nd Cir. 1976); Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394,398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). See also
1B J. Moore Federal Practice ¶ 0.409 [1.2], pp. 309-310.
Granted motions for summary judgment are likewise CT Page 10813 judgments on the merits for purposes of res judicata. Dowd v.Society of St. Columbans, 861 F.2d 761 (1st Cir. 1988), Adkinsv. Allstate Insurance Company, 729 F.2d 974 (4th Cir. 1984).
D. Whether Judgment in the Federal District Court May Serve asthe Basis for the Assertion of the Defense of Res Judicata ina State Court Proceeding
"Subject to some very limited exceptions, a judgment that is res judicata in the jurisdiction that rendered it is res judicata in all courts, state and federal. . . ." 1B J. Moore Federal Practice ¶ 0.406 [1.2], p. 267. Tucker v. Crikelair,4 Conn. App. 150, 151, 493 A.2d 247 (1985) (citing Barber v.Internat'l Co., 74 Conn. 652, 656, 51 A. 857 (1902).
In Virgo v. Lyons, 209 Conn. 497, 551 A.2d 1243 (1988), the Connecticut Supreme Court held that the close relationship between civil rights claims based upon "constitutional" torts and state common law tort actions requires application of the doctrines of res judicata and collateral estoppel in order to prevent relitigation in state courts of matters previously determined in a prior federal civil rights action. Where a plaintiff's prior federal action involved only a claim for violation of his constitutional rights under § 1983 of the Civil Rights Act of 1965, the plaintiff's state court claims for negligence and assault and battery were precluded because both causes of action arose out of the same alleged wrongs.Virgo v. Lyons, 209 Conn. 497, 551 A.2d 1243 (1988). See, also, Chicago, R.I. P. Ry. v. Schendel, 278 U.S. 611, 615,46 S.Ct. 420, 70 L.Ed 757 (1926); Bank of North America v.Wheeler, 28 Conn. 433, 73 A. 683 (1859).
Thus, a Federal Court judgment on the merits may serve as the basis for preclusion of state court claims under the doctrine of res judicata.
E. Whether the Movants Waived the Defense of Res Judicata byAcquiescing in the Splitting of the Rytmans' Claims
The Rytmans claim that the movants may not interpose res judicata as a defense because they have waived it by their conduct in this matter. They cite A.J. Masi Electric Company,Inc. v. Marron Sipe Building and Construction Corporation,21 Conn. App. 565, 574 A.2d 1323, 1324 (Conn.App. 1990), and Restatement (Second), Judgments, Section 26(1)(a) in support CT Page 10814 of this contention. Specifically, the Rytmans claim that the conduct of the movants in failing to object to the Federal RICO claim's going forward at the same time the CNB v. Rytman
matter was pending and in removing the RICO matter to Federal Court constitutes a waiver of the defense of res judicata.
 The courts of this state follow the Reinstatement (Second), judgments, in applying to the doctrine of res judicata. [Citations omitted.] The Restatement (Second), Judgments; Section 26, provides in part: "When any of the following circumstances exists, the [doctrine of res judicata] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein. . .".
A.J. Masi Electric Company, Inc. v. Marron Sipe Building andConstruction Corporation, 21 Conn. App. 565, 574 A.2d 1323,1324 (1990).
Masi, an Appellate Court decision, is the only Connecticut case cited by the Rytmans in support of their claim of waiver. It is important to note that in Masi, the parties had specifically consented to the splitting of the plaintiff's claim into two separate cases. The Rytmans cannot and do not allege any such consent here, but rather base their argument on the notion that the movants acquiesced in the splitting of their claims.
Comment "a" to Section 26(1) of the Restatement elaborates on the meaning of "acquiescence" in the context of waiver of res judicata defense:
 Where the plaintiff is simultaneously maintaining separate actions based upon the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and CT Page 10815 obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence.
The Rytmans argue that the movants did not object to the fact that the Federal RICO complaint was brought as a separate action in the Connecticut Superior Court, rather than as a proposed amendment to any of the pending state court cases. Indeed, a review of the pleadings reflects that the movants made neither a formal objection to the filing of the RICO complaint nor a motion to consolidate it with any of the then-pending state court cases. Moreover, it is undisputed that Norwich Savings Society further separated the RICO complaint from this case by removing it to the U.S. District Court in December, 1991, an action in which the other movants joined.
The Rytmans also note the history of objections by the movants to consolidation of the other pending state court actions brought by the Rytmans against the adverse parties (Rytman v. Colchester Foods, Inc., Docket No. CV-87-057527 (hereinafter "Rytman v. Colchester Foods") and Rytman v.Jacobson, Docket No. CV-90-0516800 (hereinafter "Rytman v.Jacobson")) despite the Rytmans' consistent attempts at consolidation. The Rytmans also allege that they brought their Federal RICO claim separately so that it could be "preserved within an arguable statute of limitations period." On these grounds, the Rytmans claim that the movants acquiesced in the splitting of the RICO complaint from this case and have, therefore, waived the right to assert the Federal District Court's judgment dismissing the RICO claim as the basis of a res judicata defense.
"[W]hether res judicata is a defense depends on the facts peculiar to the case", Orsolet v. DeMatteo, 206 Conn. 542,548, 539 A.2d 95 (1988) and whether the circumstances surrounding the litigation of the additional complaint constitute a waiver or acquiescence also depends on the facts peculiar to the case. In Orsolet, the Supreme Court found that the defendant's participation in a small claims action was not an acquiescence in the splitting of that claim from a regular civil docket action filed while the small claims actions was pending. The Supreme Court declined to force the defendant to "grasp either horn of the dilemma" posed by seeking consolidation of the small claims action with the CT Page 10816 regular docket matter on the one hand, thereby running the risk of having to pay the plaintiff attorney's fees, or, on the other hand, of being accused of "acquiescing" in the split. Id.
In contrast to Masi, which involved an overt consent to the splitting of the two claims, the Supreme Court in Orsolet
undertook a more careful analysis of that case's factual background. Moreover, it specifically reviewed the cases cited in the annotation entitled "Waiver of, by Failing to Promptly Raise Objection to Splitting Cause of Action," 40 A.L.R.3rd 108-31 and concluded that they were not applicable to the situation with which it was then faced.
In sharp distinction from the situation here, virtually all of the fact patterns in that annotation appear to involve claims of res judicata based on cases that had already gone to verdict, or at least situations in which the litigation was permitted to proceed for a substantial period of time or through a substantial number of procedural stages, before asserting the res judicata defense.[4] In this case, of course, the RICO matter did not go to verdict. No pleadings of any sort were filed in the state court prior to removal, and once that removal was finalized, the movants promptly filed pleadings aimed at dismissal and/or summary judgment. Under these circumstances, their failure to file a Motion to Consolidate as their first pleading prior to seeking removal can hardly be construed as the kind of acquiescence contemplated by those cases which have found waiver based on conduct.
Waiver is the intentional relinquishment of a known right. Dragan v. Connecticut Medical Examining Board,223 Conn. 618, 629, 613 A.2d 739 (1992), Novella v. HartfordAccident Indemnity Co., 163 Conn. 552, 561, 316 A.2d 394
(1972). Waiver need not be express, "but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." Novella v. Hartford Accident Indemnity Co., supra, 562; O'Hara v. State, 218 Conn. 628,641, 590 A.2d 948 (1991).
In situations such as that presented by Masi, where consent is explicit, waiver is easy to find. Where waiver is based on the concept of acquiescence, a more diligent review CT Page 10817 is needed to determine whether it is reasonable to conclude that there has been an intentional relinquishment of a known right. For conduct to be construed us a waiver of the defense of res judicata, it should be the functional equivalent of consent to the second case's proceeding to its conclusion separately from the first. In this case, it simply cannot be concluded, based on the movants' prompt preliminary action seeking removal and dismissal, that the movants were by that action agreeing that the cases could and should forever proceed separately. The deferral of any request to consolidate the RICO and state-law based claims pending the outcome of the removal and motions to dismiss and/or summary judgment had not ripened into a waiver by the time those motions had been decided.
It is the essence of res judicata that parties have the right to be protected from the harassment of repetitive lawsuits based on the same cause of action. As will be seen, infra, a review of the pleadings demonstrates that the 130 paragraphs and innumerable subparagraphs of factual allegations that form the basis of the Rytmans' RICO complaint are virtually identical to the factual allegations that support their substituted counterclaim and most of the counts of their amended cross complaint. That the movants first response to this alleged harassment was to seek to remove and dismiss, rather than consolidate,[5] cannot be construed as a waiver. Had removal not been granted or had the motions to dismiss and for summary judgment been denied in the Federal Court, there would have been ample opportunity for a timely assertion of an objection to the Rytmans' splitting of their cause of action. The fact that the RICO case never reached such a point does not convert the movants' initial response to that complaint into a waiver.
As in Orsolet, the movants were also faced with a dilemma when Rytman served his RICO complaints upon them. On the one hand, they risked being accused of acquiescence by seeking removal to Federal Court, and on the other hand, they risked loss of an opportunity to obtain a prompt adjudication of a Federal Law-based claim in the Federal Court. The Rytmans have offered no reason why the doctrine of waiver should be applied to force such a dilemma on these movants. There is "no evidence to indicate that the [movants'] conduct contributed to the filing of two separate lawsuits based on the same cause of action". Orsolet, supra at 249. To the CT Page 10818 contrary, the Rytmans had already repeatedly amended their pleadings and could have sought to do so again. The fact that the movants had opposed consolidation of the other lawsuits brought by the Rytmans, Rytman v. Colchester Egg Farms andRytman v. Jacobson, is irrelevant to this consideration and does not justify the Rytmans' filing of a separate RICO claim and a forcing of the Orsolet dilemma on the movants. Similarly, that the Rytmans may have been concerned about a possible statute of limitations problem and, therefore, sought to bring their RICO complaint as a separate matter, rather than by amendment, adds nothing to the allegation of waiver.
The conduct of the movants in this case, by immediately seeking removal of the RICO complaint to Federal Court and, once there, immediately and successfully seeking its dismissal, is not an acquiescence in the Rytmans' decision to split its cause of action. The movants, therefore, have not waived their right to assert res judicata as a defense to the pending state court claims.
With the preliminary procedural issues thus resolved, it is now time to turn to the merits of the res judicata defense.
 III WHETHER THE FEDERAL COURT'S DECISION DISMISSING THE FEDERAL RICO COMPLAINT BARS THE CLAIMS CONTAINED IN THE PRESENT COMPLAINT ON THE BASIS OF THE DOCTRINE OF RES JUDICATA
The doctrine of res judicata may be stated thus: a final judgment on the merits bars relitigation in any court of the same cause of action. See, e.g., Connecticut Water Company v.Beausoleil, 204 Conn. 38, 43, 526 A.2d 1329 (1987). "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the action." Federated Department Stores,Inc., et al v. Marilyn Moitie, et al, 452 U.S. 394, 398,101 S.Ct. 2424, 2428 (1981).
 "The doctrine of res judicata is a judicially created doctrine, which may be said to exist as an obvious rule of reason, justice, fairness, expediency, practical necessity, and public tranquility. Public policy, judicial orderliness, economy of judicial time, and the interest of CT Page 10819 litigants, as well as the peace and order of society, all require that stability should be accorded judgments, that controversies once decided on their merits shall remain in repose, that inconsistent judicial decisions shall not be made on the same set of facts, and that there be an end to litigation which, without the doctrine of res judicata, would be endless." 46 Am.Jur.2d Judgments § 395, pp. 559-561.
"Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." FederatedDepartment Stores, Inc., et al v. Marilyn Moitie, et al,452 U.S. 394, ___, 101 S.Ct. 2424, 2429 (1981), quoting Baldwin v.Traveling Men's Assn., 283 U.S. 522, 525, 51 S.Ct. 517, 518,75 L.Ed 1244 (1931).
Connecticut law is in accord with this proposition. "Our rules of res judicata are based on the public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." Duhaime v.American Reserve Life Ins. Co., 200 Conn. 360, 363-364,511 A.2d 33 (1986).
Res Judicata is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts. Hart SteelCo. v. Railroad Supply Co., 244 U.S. 299, 37 S.Ct. 506, 507,61 L.Ed 1148 (1917). Its purposes include promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system and providing repose by preventing one from being harassed by vegatious [vexatious] litigation. Statev. Ellis, 197 Conn. 436, 466, 497 A.2d 974 (1987).
The recent case of Jackson v. R. G. Whipple, Inc.,225 Conn. 705, 627 A.2d 374 (1993) gave our Supreme Court an opportunity to discuss res judicata in detail. The Court noted that "the terms res judicata and collateral estoppel refer to the concepts of claim preclusion or issue preclusion respectively." Both concepts "express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." CT Page 10820State v. Ellis, 197 Conn. 436, 465, 497 A.2d 974 (1985).
Although claim preclusion and issue preclusion often appear to merge into one another in practice, analytically they are regarded as distinct. "[C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.) Scalzo v.Danbury, 224 Conn. 124, 128, 617 A.2d 440 (1992); see alsoAetna Casualty Surety Co. v. Jones, 220 Conn. 285, 303-304,596 A.2d 414 (1991). Jackson v. Whipple, supra, at 712, 713.
A "former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made." Connecticut Water Co. v. Beausoleil, 201 Conn. 38, 43,526 A.2d 1329 (1987). The "operative facts" of a claim determine whether such claim is identical to a previously litigated cause of action. Kaufman v. Somers Board ofEducation, 368 F. Sup. 28, 32 (1973).
A cause of action is:
 . . . that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. Bridgeport Hydraulic Co. v. Pearson, 139 Conn. 186, 197, 91 A.2d 778 [1952]; Veits v. Hartford, 134 Conn. 428, 434, 58 A.2d 389 [1948]. A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action. Pavelka v. St. Albert Society, 82 Conn. 146, 147, 72 A. 725 [1909]. Gallo v. G. Fox Co., 148 Conn. 327, 330, 170 A.2d 724 (1961). "Even though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action. [Bridgeport Hydraulic Co. v. Pearson, supra, 197]." Duhaime v. American Reserve Life Ins., Co., 200 Conn. 360, 365, 511 A.2d 333 (1986). Rogozinski v. American Food Service Equipment Corp., 34 Conn. App. 732, CT Page 10821 738 (1994).
"Where a judgment on the merits is rendered in favor of the defendant, the plaintiff is precluded from subsequently maintaining a second action based upon the same operative facts in which he seeks an alternative remedy . . . in such a case he has had his day in court, and having lost upon the merits he is not entitled again to litigate his claim." Restatement of Judgments, § 65 C, at 272 (1942). "The addition of federal theories of recovery does not create a new cause of action."Saylor v. Lindsley, 391 F.2d 965, 969 n. 6 (2d Cir. 1968). A difference in the nature of the relief which has been requested will not prevent application of the doctrine of resjudicata. Lehto v. Sproul, 9 Conn. App. 441, 519 A.2d 1214
(1987); Vakalis v. Kagan, 18 Conn. App. 363, 557 A.2d 1285
(1989); Williams v. Ward, 556 F.2d 1143, 1154 (2nd Cir. 1977),cert. denied 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323
(1977).
As indicated previously, the "operative facts" which undergird the Rytmans' RICO claim are virtually indistinguishable from those that form the basis of their substituted counterclaim and amended cross complaints against the movants. Although only the RICO complaint specifically sought the relief available to it pursuant to that statute, this court finds that the RICO complaint and the state court claims all arise out of the same cause of action.
The movants argue that the Rytmans chose to leave their claims divided between two courts, and as a result, they created a situation analogous to Jackson v. Aetna LifeInsurance Co., No. CV89-0364362, Judicial District of Hartford/New Britain at Hartford, 1991 WL 135241 (July 9, 1991). In that case, Judge Maloney granted summary judgment on the basis of res judicata where the plaintiff had filed a federal civil rights action followed by a state court claim against her employer, all based on what she alleged was the wrongful termination of her employment. At trial, the Federal Court decided the case in favor of the employer, finding that the actual reason for termination was violation of company policy regarding notice of intended absence. Central to Judge Maloney's ruling was his conclusion that the plaintiff's state court claims were ones that "could have been made" in connection with her Federal Court case. Although, as the Rytmans point out, Jackson is a trial court decision not CT Page 10822 binding on this court, the logic of that decision is generally persuasive, or, at least, it would be if it were clear that the District Court here would have assumed pendent jurisdiction over the Rytmans' state-law claims.
A related situation is found in Federated DepartmentStores v. Moitie, 452 U.S. 394, 101 S.Ct. 2424 69 L.Ed.2d 103
(1981). In his concurring opinion, Justice Blackmun concludes that "[s]ince there is no reason to believe that it was clear at the outset of this litigation that this District Court would have declined to exercise pendent jurisdiction over state claims, respondents were obligated to plead those claims if they wished to preserve them." Id., at 404. See also, Restatement (Second) of Judgments § 25, Comment d (1980); and see Reporter's Note at 227 (Unless it is clear that the Federal Court would decline to adjudicate a pendent claim, failure to plead it brings it within the bar of a judgment dismissing the federal action for failure to state a claim.)
The next question is, therefore, whether it is clear that the Federal Court would have declined to adjudicate the Rytmans' pendent state claims. The Rytmans claim that it is clear that the Federal Court would have declined to take jurisdiction over Rytman's pendent state law claims. Indeed, the tenor of Judge Dorsey's decision suggests that he would not have done so, based on his thinly disguised distaste for a complaint the factual basis of which was "almost impossible' to glean."
The movants, however, argue that it cannot be said that it is clear that Judge Dorsey would have declined to exercise pendent jurisdiction. Although the wording of that decision suggests that Judge Dorsey did not think much of the merits of the state-law claims, that is not the same as concluding that he would not have accepted jurisdiction if he had been requested to do so.
Unless it is clear that the District Court would not have accepted jurisdiction over the state claims, they argue, those claims are ones which "might have been made" within the meaning of the doctrine of res judicata. Corey v. Avco-LycomingDivision, supra at 317; also, Sebastiana DiMauro v.George M. Pavia, 492 F. Sup. 1051, 1059 (D. Conn. 1979);Browning Debenture Holders Committee v. DASA Corp., 605 F.2d 35
(2nd Cir. 1978). CT Page 10823
A growing body of case law supports the Rytmans' position. Justice Brennan, in United Mine Workers v. Gibbs,383 U.S. 715, 726-727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) noted that "recognition of a Federal Court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." Given the multiplicity of state law based claims contained in the substituted counterclaim and amended cross complaint, compared with the single RICO complaint, this is quite arguably the situation here.
Unlike the situation in Jackson v. Aetna, supra, where the federal case actually went to trial, this case is more like that presented in Kavit v. A.L. Stamm Co., 401 F.2d 1176
(2nd Cir. 1974) "If it appears that the federal claims are subject to dismissals under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, the court should refrain from exercising pending jurisdiction absent exceptional circumstances." (Footnote omitted.) Id. at 1180.
Similar results have been reached in many jurisdictions. See, e.g., Merry v. Coast Community College District,158 Cal.Rptr. 603, 97 Cal.App.3d 214 (1979); Baltimore Orioles v.Major League Baseball Players, 805 F.2d 663, 682 (7th Cir. 1986); Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196
(3rd Cir. 1976); 49er Chevrolet, Inc. v. General Motors Corp.,803 F.2d 1463, 1469 (9th Cir. 1986); Ron Tonkin Gram Turismov. Wakehouse Motors, 46 Or. App. 199, 611 P.2d 658 (1980);Puckett v. City of Emmett, 113 Idaho 639, 747 P.2d 48 (1987).
It must also be remembered that the Rytmans did not seek to have their RICO case heard in Federal District Court, that they fought removal to that court, and, once that battle had been lost, that they were immediately faced with motions seeking the dismissal of their RICO case on the merits. Under these circumstances, it would be an unduly harsh consequence for them to be held to have forfeited the opportunity to litigate their state law claims merely because during this flurry of activity in a forum which they did not choose, they failed to seek the exercise of pendent jurisdiction over those CT Page 10824 claims, an act of discretion not likely to have been undertaken by the Federal District Court in any event.
Even if the law governing the exercise of discretion in asserting pendent jurisdiction were not as clear as it appears to be, the best that the movants could hope for on this issue is the conclusion that whether the District Court would have exercised jurisdiction over the state claims is a factual question, one which the pleadings and affidavits leave in dispute. In considering motions for summary judgment, it is not the function of the court to resolve disputed issues of fact. If there is a disputed issue of fact, and if the resolution of that fact is material to the claim for summary judgment, then the motion may not be granted. In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431, 362 A.2d 857 (1975).
Based on case law strongly suggestive of the notion that the District Court would not have taken jurisdiction over the Rytmans' state law claims, or, alternatively, because of the existence of a dispute over a material fact, namely whether or not the state-law claims are ones which "might have been made" in connection with the federal RICO complaint, the movants are not entitled to summary judgment based on the doctrine of claim preclusion.
 IV WHETHER, IN THE ABSENCE OF A BASIS FOR THE APPLICATION OF RES JUDICATA (CLAIM PRECLUSION), THERE EXISTS A BASIS FOR THE APPLICATION OF COLLATERAL ESTOPPEL (ISSUE PRECLUSION) WITH RESPECT TO ANY OF THE ISSUES CONTAINED IN THE RYTMANS' SUBSTITUTED COUNTERCLAIM AND AMENDED CROSS COMPLAINT
Although the Motions for Summary Judgment, as well as the original Memoranda of Law filed both in support and in opposition, invoke the phrase "res judicata" and do not specifically mention collateral estoppel, it is widely recognized that collateral estoppel, or issue preclusion, is a subset of res judicata, which is often defined as claim preclusion. "Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same CT Page 10825 parties upon a different claim." In re Juvenile Appeal(83-DE), 190 Conn. 310, 316, 460 A.2d 1277 (1983).
The Rytmans had stated at page 16 of their September 9, 1993 brief in opposition that: "It is important to note that no adverse party has argued that the issues raised by Rytmans' claim in the CNB v. Rytman matter were in fact adjudicated in the decision dismissing the Rytman v. Kofkoff matter. In fact they were not. Nor do any of the adverse parties argue that the issues raised by Rytmans' claims in CNB v. Rytman were adjudicated by the even, more restrictive decision of the Second Circuit Court of Appeals."
This court, however, felt that the question of collateral estoppel had been fairly put into play by the pleadings themselves, even though it had not been briefed by the parties. See, DiMauro v. Pavia, 492 F. Sup. 1051, 1057
(D.Conn., 1979). At the time of oral argument, therefore, it invited the parties to file Memoranda of Law addressing this issue. They have now done so.
"The terms res judicata and collateral estoppel refer to the concepts of claim preclusion or issue preclusion respectively. Both claim preclusion and issue preclusion "express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." State v. Ellis, 197 Conn. 436,465, 497 A.2d 974 (1985). Whereas claim preclusion involves relitigation of a particular cause of action, however, collateral estoppel, or issue preclusion, applies "if an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Scalzo v. Danbury, 224 Conn. 124,617 A.2d 440 (1992) (citing Restatement (Second), Judgments § 27 (1982)).
"`For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment.'" (Emphasis added.) Virgov. Lyons, 209 Conn. 497, 501, 551 A.2d 1243 (1988); see alsoAshe v. Swenson, 397 U.S. 436, 445, 90 S.Ct. 1189,25 L.Ed.2d 469 (1970); Saporoso v. Aetna Life Casualty Co., 221 Conn. 356,603 A.2d 1160 (1992); State v. Hope, 215 Conn. 570, 584,577 A.2d 1000 (1990), cert. denied, 498 U.S. 1088, 111 S. Ct CT Page 10826 968, 112 L.Ed.2d 1054 (1991). "[T]he prior litigation must have resolved the same legal or factual issue that is present in the second litigation." Upjohn Co. v. Planning ZoningCommission, 224 Conn. 82, 94, 616 A.2d 786 (1992).
An issue is "actually litigated" if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. 1 Restatement (Second), Judgments 27, comment (d) (1982). An issue is necessarily determined if, "in the absence of a determination of the issue, the judgment could not have been validly rendered." F. James G. Hazard, Civil Procedure (3d Ed. 1985) 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), Judgments 27, comment (h) (1982).
The issue sought to be precluded need not be precisely identical to that decided in the prior case as long as it is substantially the same or at least clearly derivative of the prior court's decision on that issue. Upjohn v. Planning Zoning Commission, supra. "To the extent that collateral estoppel has a fixed star, the requirement of issue identity between the prior and present action is immutable. Under the doctrine of collateral estoppel, the issue prong is satisfied if the pleadings, parties and claims reveal significant similarities." Scheiner v. Wallace, 832 F. Sup. 687, 695 (SDNY 1993). "An issue may be `actually' decided even if it is not explicitly decided, for it may have constituted, logically or practically, a necessary component of the decision reached."Dennis v. Rhode Island Hospital Trust National Bank, 744 F.2d 893,899 (1st Cir. 1984).
The Rytmans claim that collateral estoppel can have no application in a case where the prior judgment is based on a Federal Rule 12(b)(6) failure to state a claim upon which relief can be granted, citing DeLaurentis v. New Haven,220 Conn. 225, 240-41, 597 A.2d 807 (1991): "By definition, there can be no collateral estoppel `fact preclusion' based upon a successful 12(b)(6) motion, for no `facts' are either litigated or found."
But "fact preclusion" is not the question here, for in deciding the 12(b)(6) and summary judgment motions, Judge CT Page 10827 Dorsey assumed, for purposes of those motions, that all thefacts alleged by the Rytmans in their RICO complaint were true and not in dispute. In resolving the motions, the District Court made findings on issues that were germane not only to the Federal RICO complaint but to this case as well. Specifically, and assuming the truth of the facts alleged in the complaint, Judge Dorsey nonetheless found that the Rytmans:
1) offered "no factual allegations supporting the contention that defendants were engaged in a joint enterprise of any sort." The issue of whether or not the facts alleged by the Rytmans in the instant case constitute a "joint enterprise" has therefore been adjudicated adversely to the Rytmans. Except, however, to the extent that the federal RICO. statute has been incorporated into the instant substituted counterclaim and amended cross complaint (Subparagraph mmmm of most of the counts), the resolution of this issue has little impact on this case.
2) offered "no factual allegations supporting the contention that . . . defendants' actions constituted anything more than courses of action necessitated by plaintiffs' defaults after an economic downturn in plaintiffs' businesses". Although not a detailed finding with respect to each of the acts alleged by the Rytmans on the part of the movants, this finding is essentially an adjudication that the various allegations made by the Rytmans, assuming their truth, do not amount to criminal or tortious conduct.
3) "defendants' conduct, independent in origin even if conspiratorial in nature, has none of the commonality of purpose nor joinder of method to constitute a RICO enterprise." Again, this finding forms an independent basis for resolution of the issue of whether or not the facts alleged by the Rytmans, if true, could justify a conclusion that the activities of the movants constituted a RICO enterprise.
4) "the claim that the defendants' conduct . . . constituted extortionate threats . . . is without merit." This finding adjudicates the issue of extortion adversely to the Rytmans.
5) "Plaintiffs offer no evidence why these agreements, by which defendants obtained security interests in plaintiffs' CT Page 10828 assets in return for loans or in satisfaction of debt, were outside the realm of customary debt enforcement procedures." This finding resolves issues relating to the alleged impropriety or illegality of the movants' roles in obtaining security interests in the Rytmans' properties.
6) "Though the agreements may have been signed while plaintiffs' business was `under economic duress' . . . the duress was not of defendants' negligence and does not constitute extortion or fraud by defendants." This finding adjudicates the issues of fraud, extortion and negligence in connection with the Rytmans' "economic duress" adversely to the Rytmans.
On appeal, the Second Circuit affirmed Judge Dorsey's findings, stating: "We have considered all of Rytman's contentions on this appeal and have found them to be without merit." 2d Cir. Op. at 4. It specifically held that the Rytmans failed to plead any Hobbs Act violation to constitute "racketeering" within the meaning of the RICO statute, and that, more specifically, the specific allegations of their RICO complaint did not make out a claim of "extortion", "acquisition or maintenance of an interest in or control of a borrower's business" or fraud. The Second Circuit also found no evidence "from which an inference could be drawn that Norwich attempted to acquire or maintain an interest in Rytman's enterprise in an unlawful manner".[6]
Thus, the question is whether any of the legal issues resolved in the federal courts . . . fraud, negligence, extortion or other tortious conduct . . . should serve to bar relitigation of some or all of the issues raised by Rytman in this action. To answer that question, the court must first determine whether such issues were "actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Scalzo v. Danbury, 224 Conn. 124,617 A.2d 440 (1992) (citing Restatement (Second), Judgments § 27 (1982)).
The Restatement's requirement that an issue be "actually litigated" embodies the important concern that the parties be cognizant of and interested in an issue before they are precluded from litigating it. There is no question but that the Rytmans had a full and fair hearing as to the legal sufficiency of their RICO claims. The issues were extensively briefed and argued, and the adverse decision was appealed all CT Page 10829 the way to the United States Supreme Court.
The next question is what issues relevant to this case were "actually decided" by the District Court. In McNellis v.First Federal Savings and Loan Association, 364 F.2d 251 (CA2 1966), the Second Circuit held that "a reasonable doubt as to what was decided in the first action should preclude the dramatic remedy of foreclosing a party from litigating an essential issue." Id at 257. See also, Northern Oil Companyv. Socony Mobil Oil Company, 368 F.2d 384, 388 (CA2 1966);Kaufman v. Moss, 420 F.2d 1270, 1274 (CA3 1970). "[I]f reasonable doubt exists as to what was decided in the first action, the doctrine of res judicata should not be applied."Matter of Braniff Airways, Inc. 783 F.3d 1283, 1289 (5th Cir. 1986), citing Kaufman v. Moss, 402 F.2d 1270, 1274 (3rd Cir.),cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d (1970).
Each of the issues outlined, supra, at pages 32, 33 and 34, having been determined by the District Court adversely to the Rytmans[7], were material to its judgment, even though certain of them, such as the conclusion that no "RICO enterprise" had been effectively alleged in the complaint, would alone have formed a sufficient basis for dismissing the RICO claim. Each issue was actually decided by the court after a full and fair hearing. The resolution of each issue thus meets the requirement for consideration as to its preclusive effect on like issues raised in the instant case.
The court is next required to review each count of the Rytmans' substituted counterclaim and amended cross complaint to determine whether or not the issues decided by Judge Dorsey are dispositive of any of them. In doing so, it is important to recognize that almost all of these counts depend on precisely the same set of facts and the same "delicts" that the Rytmans asserted as the basis of their RICO complaint, with some added factual allegations for certain counts, even though the legal theory of recovery differs from count to count. Like the District Court, this court has experienced some difficulty in sorting through the almost mind-numbing prolixity of the Rytmans' pleadings, but it nonetheless believes that it has succeeded in discerning the essence of the legal issues raised by each such count and in determining whether those issues have been actually decided in the federal courts: CT Page 10830
Count 1 of the Rytmans' Substituted Counterclaim alleges, based on the same set of alleged facts that constitutes the RICO claim, a breach of fiduciary duty by CNB.
Count 2 of the Rytmans' Substituted Counterclaim alleges, based on the same set of alleged facts that constitutes the RICO claim, that CNB failed to act in a commercially reasonable manner.
Count 3 of the Rytmans' Substituted Counterclaim alleges, based on the same set of alleged facts that constitutes the RICO claim, duress on the part of CNB.
Count 4 of the Rytmans' Substituted Counterclaim alleges, based on the same set of alleged facts that constitutes the RICO claim, a breach of the covenant of good faith and fair dealing on the part of CNB.
Count 5 of the Rytmans' Substituted Counterclaim alleges, based on the same set of alleged facts that constitutes the RICO claim, unfair or deceptive acts and practices by CNB.
Count 6 of the Rytmans' Substituted Counterclaim alleges, based on the same set of alleged facts that constitutes the RICO claim, tortious interference with the Rytmans' business expectancy on the part of CNB.
Count 7 of the Rytmans' Substituted Counterclaim alleges, based on the same set of alleged facts that constitutes the RICO claim, that the October agreement between the parties is "unconscionable and should be declared null and void."
Count 8 of the Rytmans' Substituted Counterclaim alleges, based on the same set of alleged facts that constitutes the RICO claim, violation by CNB of 12 U.S.C. § 1972 (1)(c) by requiring "additional credit, property or service, other than those related to and usually provided in connection with a loan, discount, deposit or trust service.
Count 9 of the Rytmans' Substituted Counterclaim, based on the same set of alleged facts that constitutes the RICO claim, alleges fraudulent representations by CNB.
Count 10 of the Rytmans' Substituted Counterclaim alleges, based on the same set of alleged facts that CT Page 10831 constitutes the RICO claim, a breach of fiduciary duty by Kofkoff Egg Farm Limited Partnership, Samuel Kofkoff, Colchester Foods, Inc., Robert Kofkoff, Joseph H. Fortin, Fitchville Realty, Milton L. Jacobson, Glenn M. Gordon, Brown, Jacobson, Jewett and Laudone, P.C., Norwich Savings Society and/or CNB.
Count 11 of the Rytmans' Substituted Counterclaim, based on the same set of alleged facts that constitutes the RICO claim, appears to allege something resembling coercion and conspiracy, although this is difficult to determine with precision from the pleadings themselves.
Count 12 of the Rytmans' Substituted Counterclaim, based on the same set of alleged facts that constitutes the RICO claim, alleges an antitrust conspiracy on the part of some or all of the third-party defendants.
Count 13 of the Rytmans' Substituted Counterclaim, based on the same set of alleged facts that constitutes the RICO claim, alleges tortious interference with the Rytmans' business expectancy on the part of Kofkoff Egg Farm Limited Partnership, Samuel Kofkoff, Colchester Foods, Inc., Robert Kofkoff, Joseph H. Fortin, Milton L. Jacobson, Glenn M. Gordon, Brown, Jacobson, Jewett and Laudone, P.C., Norwich Savings Society and/or CNB.
Count 14 of the Rytmans' Substituted Counterclaim, based on the same set of alleged facts that constitutes the RICO claim, alleges that Kofkoff Egg Farm Limited Partnership, Samuel Kofkoff, Colchester Foods, Inc., Robert Kofkoff, Joseph H. Fortin, Milton L. Jacobson, Glenn M. Gordon, Brown, Jacobson, Jewett and Laudone, P.C., Norwich Savings Society and/or CNB combined and or conspired to defraud the Rytmans, restrain their trade, breach their fiduciary duties, violate CUTPA (CGS Sec. 42-110a et seq.), breach their contracts with the Rytmans, Violate 12 U.S.C. § 1972, and cause the Rytmans economic duress.
Count 15 of the Rytmans' Substituted Counterclaim, based on the same set of alleged facts that constitutes the RICO claim, alleges intentional conduct by CNB that it knew or should have known would cause the Rytmans emotional distress.
Count 16 of the Rytmans' Substituted Counterclaim, based CT Page 10832 on the same set of alleged facts that constitutes the RICO claim, alleges intentional infliction of emotional distress on the part of CNB.
Count 17 of the Rytmans' Substituted Counterclaim, based on the same set of alleged facts that constitutes the RICO claim, alleges a conspiracy on the part of CNB with the other third-party defendants to commit intentional conduct that it knew or should have known would cause the Rytmans emotional distress.
Count 18 of the Rytmans' Substituted Counterclaim, based on the same set of alleged facts that constitutes the RICO claim, alleges a conspiracy by CNB with the other third-party defendants to intentionally inflict emotional distress on the Rytmans.
Count 19 of the Rytmans' Substituted Counterclaim, based on the same set of alleged facts that constitutes the RICO claim, appears to allege whatever conspiracies the previous 18 counts may have overlooked and seeks damages for the emotional distress suffered by the Rytmans.
Each and every one of the legal issues raised by the nineteen counts of the Rytmans' substituted counterclaim, having been based on essentially the same set of facts as that alleged as the basis for the RICO claim, were in fact decided adversely to the Rytmans in the federal courts. Although Judge Dorsey's opinion does not purport to address those issues in precisely the same terms as they are alleged in the state court pleading, this court is satisfied beyond a reasonable doubt that those issues were addressed and decided and are encompassed in Judge Dorsey's decision, affirmed on appeal.
The amended cross complaint dated September 19, 1991, includes five counts that do not purport to rely on the factual allegations contained in the RICO complaint. These include:
Count 1: Breach of contract (Commission agreement) by Colchester Foods. Although factual allegations relating to this Commission Agreement are contained within the RICO complaint, it cannot be said beyond a reasonable doubt that the District Court actually decided the issues underlying this CT Page 10833 breach of contract claim adversely to the third-party plaintiff, Colchester Egg Farm, Inc.
Count 2: Breach of contract (Commission agreement) by Robert Kofkoff and Joseph Fortin. Although factual allegations relating to this Commission Agreement are contained within the RICO complaint, it cannot be said beyond a reasonable doubt that the District Court actually decided the issues underlying this breach of contract claim adversely to the third-party plaintiff, Colchester Egg Farm, Inc.
Count 3: Breach of Contract (Egg purchase agreement) by Colchester Foods. Although factual allegations relating to this Egg Purchase Agreement are contained within the RICO complaint, it cannot be said beyond a reasonable doubt that the District Court actually decided the issues underlying this breach of contract claim adversely to the third-party plaintiffs, Julius and Dora Rytman.
Count 4: Infliction of economic duress by Colchester Foods, Robert Kofkoff, Samuel Kofkoff and Joseph Fortin. The factual allegations contained within this count are also contained among the allegations of the RICO complaint. This issue was actually litigated and the District Court explicitly found against the Rytmans on the issue of infliction of economic duress.
Count 5: Infliction of economic duress by Colchester foods, Robert Kofkoff, Samuel Kofkoff and Joseph Fortin. The factual allegations contained within this count are also contained among the allegations of the RICO complaint. This issue was actually litigated and the District Court explicitly found against the Rytmans on the issue of infliction of economic duress.
Count 6 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Kofkoff Egg Farm Limited Partnership, Colchester Foods, Samuel Kofkoff, Robert Kofkoff and Joseph H. Fortin, Fitchville Realty, Inc., Norwich Savings Society, Brown, Jacobson, Jewett and Laudone, P.C., Milton Jacobson and/or Glenn M. Gordon breached the covenant of good faith and fair dealing at common law and/or pursuant to Connecticut General Statutes § 42a-1-203 and/or failed to act in a commercially reasonable manner in violation of Section 42a-9-501, CT Page 10834 other statutes and/or common law. The issues forming the basis of these claims were actually decided adversely to the Rytmans in the District Court.
Count 7 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Samuel Kofkoff, Robert Kofkoff, Joseph H. Fortin, Colchester Foods, Fitchville Realty, Inc., and Kofkoff Egg Farm Limited Partnership engaged in unfair and deceptive acts and/or practices in conduct of their trade or business in violation of Connecticut General Statutes § 42-110b(a). The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 8 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Samuel Kofkoff, Robert Kofkoff, Joseph H. Fortin, Colchester Foods, Fitchville Realty, Inc., Kofkoff Egg Farm Limited Partnership, Brown, Jacobson, Jewett and Laudone, P.C., Milton L. Jacobson and Glenn M. Gordon interfered with the Rytmans' contractual rights. The issues which formed the basis for this claim were actually decided adversely to the Rytmans in the District Court.
Count 9 of the Amended Cross Complaint alleges, based on certain of the alleged facts that constitute the RICO claim, that Colchester Foods, Inc., Samuel Kofkoff, Joseph H. Fortin and/or Robert Kofkoff made false and malicious statements regarding the condition of the Schwartz Farm. The issues underlying this claim were actually decided adversely to the Rytmans in the District Court.
Count 10 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Samuel Kofkoff, Robert Kofkoff, Joseph H. Fortin, Colchester Foods, Inc., Fitchville Realty, Inc., Kofkoff Egg Farm Limited Partnership, Brown, Jacobson, Jewett and Laudone, P.C., Milton L. Jacobson and/or Glenn M. Gordon intentionally and/or recklessly inflicted emotional distress on the Rytmans. The issues which form the basis of these claims were actually decided adversely to the Rytmans in the District Court.
Count 11 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute CT Page 10835 the RICO claim, that Colchester Foods, Inc., Samuel Kofkoff, Robert Kofkoff, Joseph H. Fortin and/or Kofkoff Egg Farm Limited Partnership fraudulently induced the Rytmans to enter into certain transactions described in the RICO complaint. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 12 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Samuel Kofkoff, Robert Kofkoff, Joseph H. Fortin, Colchester Foods, Inc., Kofkoff Egg Farm Limited Partnership, Milton L. Jacobson, Glenn M. Gordon and Brown, Jacobson, Jewett and Laudone, P.C., Norwich Savings Society and/or Connecticut National Bank conspired to force the Rytmans out of business. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 13 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Colchester Foods, Inc., Samuel Kofkoff, Robert Kofkoff, Joseph H. Fortin, Kofkoff Egg Farm Limited Partnership, Fitchville Realty, Inc., Brown, Jacobson, Jewett and Laudone, P.C., Milton L. Jacobson, Glenn M. Gordon, Norwich Savings Society and/or Connecticut National Bank tortiously interfered with the Rytmans' business expectancy. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the, District Court.
Count 14 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Kofkoff Egg Farm Limited Partnership, Samuel Kofkoff, Robert Kofkoff, Joseph H. Fortin, Colchester Foods, Inc. and Fitchville Realty, Inc. breached their fiduciary duty to the Rytmans. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 15 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Connecticut National Bank and/or Norwich Savings Society breached their fiduciary duty to the Rytmans. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court. CT Page 10836
Count 16 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Samuel Kofkoff, Robert Kofkoff, Joseph H. Fortin, Kofkoff Egg Farm Limited Partnership, Colchester Foods, Inc., Milton L. Jacobson, Glenn M. Gordon, Brown, Jacobson, Jewett and Laudone, P.C., Norwich Savings Society and/or Connecticut National Bank conspired to defraud the Rytmans, to restrain their trade, to breach their fiduciary duty, to violate Connecticut General Statutes § 42-110a et seq., to breach their respective contracts with Colchester to violate 12 U.S.C. § 1972 and cause the Rytmans to suffer economic duress and emotional distress. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 17 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Norwich Savings Society breached its fiduciary duty to the Rytmans. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 18 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Milton L. Jacobson, Glenn M. Gordon, Brown, Jacobson, and/or Brown, Jacobson, Jewett and Laudone, P.C. breached their fiduciary duty to the Rytmans. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 19 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Milton L. Jacobson, Glenn M. Gordon and/or Brown, Jacobson, Jewett and Laudone, P.C. engaged in unfair and/or deceptive acts for practices in violation of Connecticut General Statutes § 42-110b(a). The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 20 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Milton L. Jacobson, Glenn M. Gordon and/or Brown, Jacobson, Jewett and Laudone, P.C. knowingly participated in Connecticut National Bank and/or Norwich Savings Society breach of fiduciary duty owed to the Rytmans. CT Page 10837 The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 21 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Milton L. Jacobson, Glenn M. Gordon and Brown, Jacobson, Jewett and Laudone, P.C. knowingly participated in other third-party defendants' breach of fiduciary duty. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 22 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, as well as certain additional alleged facts, that Milton L. Jacobson, Glenn M. Gordon and/or Brown, Jacobson, Jewett and Laudone, P.C. were negligent and/or breached their duty to [re]present the Rytmans with reasonable care, skill and diligence possessed and exercised by ordinary attorneys in similar circumstances in the representation of plaintiffs. This is essentially a claim of legal malpractice based in part upon issues which it cannot be said beyond a reasonable doubt were actually decided adversely to the Rytmans in the District Court.
Count 23 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Norwich Savings Society, Samuel Kofkoff, Robert Kofkoff, Joseph H. Fortin, Kofkoff Egg Farm Limited Partnership, Colchester Foods, Inc. and Fitchville Realty, Inc. knowingly participated in Milton L. Jacobson, Glenn M. Gordon and/or Brown, Jacobson, Jewett and Laudone, P.C.'s breach of fiduciary duty. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 24 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Colchester Foods, Inc., Samuel Kofkoff, Robert Kofkoff, Joseph H. Fortin, Fitchville Realty, Inc., Norwich Savings Society, Brown, Jacobson, Jewett and Laudone, P.C., Milton L. Jacobson and/or Glenn M. Gordon inflicted economic duress upon the Rytmans. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court. CT Page 10838
Count 25 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Milton L. Jacobson, Glenn M. Gordon and/or Brown, Jacobson, Jewett and Laudone, P.C. fraudulently induced the Rytmans to sign the October 28, 1987 agreement. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 26 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that the third-party defendants knew or should have known that the actions enumerated in Counts 1 through 25 would result in the infliction of mental distress and anguish on the Rytmans. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
Count 27 of the Amended Cross Complaint alleges, based on substantially the same set of alleged facts that constitute the RICO claim, that Robert Kofkoff, Samuel Kofkoff, Joseph H. Fortin, Kofkoff Egg Farm Limited Partnership, Fitchville Realty, Inc., Milton L. Jacobson, Glenn M. Gordon, Brown, Jacobson, Jewett and Laudone, P.C. willfully, maliciously, outrageously, deliberately, purposely and/or recklessly inflicted emotional and/or mental distress upon the Rytmans. The issues which form the basis of this claim were actually decided adversely to the Rytmans in the District Court.
The "Additional Count" of the amended cross complaint dated December 8, 1992, alleges, based on substantially the same set of alleged facts that constitute the RICO claim as well as certain additional facts, that Milton L. Jacobson, Glenn M. Gordon and/or Brown, Jacobson, Jewett and Laudone, P.C. breached their duties as attorneys to the Rytmans. As with Count 22, this is essentially a claim of legal malpractice, based in part upon issues which it cannot be said beyond a reasonable doubt were actually decided adversely to the Rytmans in the District Court.
Issue preclusion "`must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Sealfon v. United States, 332 U.S. 575, 579
[68 S.Ct. 237, 98 L.Ed. 180 (1948)]." State v. Aparo, 223 Conn. 384,390, 614 A.2d 401 (1992), cert. denied, ___ U.S. ___, 113 CT Page 10839 S.Ct. 1414, 122 L.Ed.2d 785 (1993)." Jackson v. R. G. Whipple,Inc., 225 Conn. 705, 717, fn. 8. (1993). Bearing these principles in mind and noting those issues raised by the Rytmans' substituted counterclaim and amended cross complaints which have actually been en decided adversely to them in the federal courts, the Rytmans are therefore precluded from relitigating in this forum those counts which purport to raise those same issues.
The Motions for Summary Judgment are therefore granted as to the substituted counterclaim in its entirety and as to Counts 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26 and 27 of the amended cross complaint. The Motion for Summary Judgment by the third-party defendants as it relates to Counts 1, 2, 3, 22 and the "Additional Count" of the amended cross complaint is denied.
Jonathan E. Silbert, Judge