[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENTPLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (#139)
On February 9, 1993, the plaintiff, Putnam Resources (Putnam), a limited partnership, filed a revised complaint against the defendant, Frenkel Co., Inc. (Frenkel), asserting claims for CT Page 7564 breach of contract, negligence and breach of fiduciary duty.[1]
Specifically, Putnam alleges that its business includes "entering into lease and consignment arrangements with jewelry manufacturers to provide gold and other precious metals to such manufacturers for use in their manufacturing processes." Putnam alleges that its predecessor, Fundamental Resources (Fundamental), was also a precious metals dealer with business similar to that of the plaintiff.
Frenkel allegedly became the insurance broker for Fundamental in 1983. Putnam alleges that sometime in 1985 it acquired Fundamental's assets and "succeeded to its interest" under an insurance policy from Marine Indemnity Insurance Co. (Marine). In June or July 1986, Putnam alleges that Marine advised Frenkel that it would not be renewing Putnam's insurance policy, and therefore, Frenkel began discussions with the underwriters at Lloyd's of London (Lloyd's) through J.H. Minet Co., Ltd. (Minet), Lloyd's approved broker in London. Putnam alleges that Frenkel prepared a proposal on behalf of Putnam, based upon information it had in its own file which included information relating to prior losses that Putnam had reported, and that the proposal was sent to Lloyd's through Minet. Putnam alleges that Frenkel used its own discretion in deciding what information and documentation to provide to Lloyd's, and in electing not to disclose Putnam's prior losses, despite Lloyd's requests for "information about Putnam relating to `premiums paid, claims recovered, claims outstanding' and for `any useful background information.'"
On September 10, 1986, Lloyd's allegedly agreed to issue an "all risk policy" to Putnam based upon the representations of, and information supplied by, Frenkel. The initial policy limit was $5 million, which was subsequently increased to $8 million. Putnam alleges that the property it sought to have insured included gold, which was located in Rhode Island at the premises of its customer, Sammartino, Inc. (Sammartino). On July 2 and 3, 1987, Putnam alleges that Sammartino suffered a substantial loss of gold, including the gold owned by Putnam stored on Sammartino's premises that was valued at $3,930,488. Putnam submitted a claim for the loss under its policy with Lloyd's, and Lloyd's paid $2 million to Putnam on the claim. Putnam further alleges that the claim was subsequently denied by Lloyd's because, among other reasons, Putnam, through Frenkel, had failed to disclose its prior losses and therefore, had not disclosed "material facts to Lloyd's in obtaining the Policy." CT Page 7565
Putnam refused to return the $2 million that Lloyd's had paid to it, and thereafter, commenced an action in the United States District Court for the District of Rhode Island against the "leading underwriter under the Lloyd's Policy," Ronald Pateman, who is not a party in this action, to recover the balance of its loss.[2] Pateman then brought an action in the same court against Frenkel.[3] Putnam alleges that in its action against Pateman, the jury denied it from any recovery under the policy because, among other reasons, "Pateman proved its defense of nondisclosure of a material fact by Putnam through its broker, Frenkel." The jury's finding that Pateman proved its defense of nondisclosure was affirmed by the United States Court of Appeals for the First Circuit on January 20, 1992.
It is based upon these allegations that Putnam claims that Frenkel: (1) breached its contract, pursuant to which Frenkel was to place Putnam's insurance risk with an appropriate insurer, and to exercise due care "in securing the insurance coverage by providing full disclosure . . . of the information that was needed to secure a valid and enforceable insurance policy;" (2) breached its duty to exercise reasonable care in effecting the insurance sought by Putnam; and (3) breached its "duty of good faith and undivided loyalty" to Putnam.
On September 8, 1993, Frenkel filed an answer and seven special defenses: (1) failure to state a cause of action; (2) statute of limitations; (3) collateral estoppel of the finding that Putnam's loss was not in the policy period; (4) collateral estoppel of the finding that Putnam's loss was not covered due to the "infidelity" exclusion; (5) Putnam's claim was excluded from coverage under the terms of the policy; (6) Putnam's loss was not caused by an "occurrence" within the time covered by the policy; and (7) Putnam's loss was not incurred during the policy period.
Frenkel filed a motion for summary judgment, along with a supporting memorandum of law and exhibits on March 7, 1994.[4] On April 29, 1994, Putnam also filed a motion for partial summary judgment, along with a supporting memorandum of law. On March 6, and March 20, the parties filed reply memoranda.
Pursuant to Practice Book § 384 summary judgment shall be granted "`if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105, CT Page 7566639 A.2d 507 (1994). "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue." (Citations omitted.) Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984); Farrell v. Farrell,182 Conn. 34, 39, 438 A.2d 415 (1980).
In determining whether an issue of material fact exists, the evidence is considered in the light most favorable to the nonmoving party. Strada v. Connecticut Newspaper, Inc., 193 Conn. 313,317, 477 A.2d 1005 (1984). In deciding a motion for summary judgment the trial court may consider affidavits and any other proof submitted by the parties, in addition to the pleadings. Pepev. City of New Britain, 203 Conn. 281, 285-86, 524 A.2d 629 (1987). "Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving [such] a claim." (Citation omitted.) Jacksonv. R.G. Whipple, Inc., 225 Conn. 705, 712, 627 A.2d 374 (1993).
1. Collateral Estoppel
As a preliminary matter, both Putnam and Frenkel rely upon the doctrine of collateral estoppel as a ground for their motions for summary judgment, however, the parties disagree as to whether the state or federal law of collateral estoppel should be applied by this court. Specifically, Frenkel provides Connecticut caselaw as support for its collateral estoppel argument. Putnam argues that Frenkel's reliance upon Connecticut law is misplaced because the effect of a federal judgment is determined by the federal doctrine of collateral estoppel and res judicata, relying upon Gelb v. RoyalGlobe Ins. Co., 798 F.2d 38, 40-43 (2nd Cir. 1986), B.N.E.Swedbank, S.A. v. Banker, 791 F. Sup. 1002, 1005-06 (S.D.N Y 1992), Hoppe v. G.D. Searle Co., 779 F. Sup. 1425 (S.D.N.Y. 1991) and Carlin v. Gold Hawk Joint Venture, 778 F. Sup. 686, 690
(S.D.N.Y. 1991), for support of that proposition. However, these cases hold that federal preclusion law should be applied by a federal court, sitting in diversity, in determining the preclusive effect of a prior federal diversity judgment or federal question judgment. Therefore, Putnam's reliance upon these cases is misplaced because when compared to the facts of the present case.
In fact, the Connecticut law of collateral estoppel has been applied by numerous Connecticut courts in their determination of CT Page 7567 the preclusive effect of the findings of federal courts in preceding federal actions. See Upjohn Co. v. Planning ZoningCommission, 224 Conn. 82, 93-94, 616 A.2d 786 (1992); Virgo v.Lyons, 209 Conn. 497, 501-02, 551 A.2d 1243 (1988); ConnecticutNational Bank v. Rytman, 12 Conn. L. Rptr. 637, 643-44 (October 19, 1994, Silbert, J.), Busconi v. Dighello, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 036160 (June 28, 1994, Curran, STR); Mascia v. Faulkner, 9 CSCR 565, 566 (April 28, 1994, Fracasse, J.), Golino v. City of New Haven, 9 CSCR 553 (April 21, 1994, Fracasse, J.).
A. Collateral Estoppel as to Frenkel
Putnam moves for summary judgment as to its first and second counts, alleging breach of contract and negligence, on the ground of collateral estoppel. Specifically, Putnam argues that in the prior federal action the jury determined that Frenkel made material misrepresentations to Lloyd's, and that this finding was affirmed on appeal.[5] Putnam further argues that Frenkel was its agent for purposes of obtaining the insurance policy, and that Frenkel had a full and fair opportunity to litigate this issue. Therefore, Putnam argues that Frenkel is bound by the jury's prior finding of nondisclosure, and is now collaterally estopped from relitigating this issue.
Frenkel argues that it is not collaterally estopped from litigating the issue of nondisclosure because: the issue of nondisclosure of material facts has never been litigated between it and Putnam; the issue now litigated is not identical to the issue of nondisclosure litigated between Putnam and Pateman; the finding of nondisclosure by Frenkel in Pateman v. Frenkel was reversed by the Court of Appeals, and therefore is not a final judgment for purposes of collateral estoppel; and there was no privity between it and Putnam in the prior federal action.
"Under Connecticut law, [c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which is already has had an opportunity
to litigate. . . ." (Citations omitted; emphasis in original; CT Page 7568 internal quotation marks omitted.) Commissioner of Motor Vehiclesv. DeMilo Co., 233 Conn. 254, 267, ___ A.2d ___ (1995).
"An issue is actually litigated if it is properly raised in the pleadings, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependant upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Citations omitted; internal quotation marks omitted.) CarolManagement Corp. v. Board of Tax Review, 228 Conn. 23, 32-33,633 A.2d 1368 (1993); Scalzo v. Danbury, 224 Conn. 124, 128-29,617 A.2d 440 (1992).
"In order for collateral estoppel to apply, however, there must be an identity of issues, that is, the prior litigation must have resolved the same legal or factual issue that is present in the second litigation." Upjohn Co. v. Planning ZoningCommission, supra, 224 Conn. 82, 93-94. "In order for collateral estoppel to bar there litigation of an issue in a later proceeding, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding. To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding . . . ." (Citations omitted; internal quotation marks omitted.) AetnaCasualty Surety Co. v. Jones, 220 Conn. 285, 297, 596 A.2d 414
(1991).
"The issue sought to be precluded need not be precisely identical to that decided in the prior case as long as it is substantially the same or at least clearly derivative of the prior court's decision on that issue. . . . To the extent that collateral estoppel has a fixed star, the requirement of issue identity between the prior and present action is immutable. Under the doctrine of collateral estoppel, the issue prong is satisfied if the pleadings, parties and claims reveal significant similarities. . . . An issue may be actually decided even if it is not explicitly decided, for it may have constituted, logically or practically, a necessary component of the decision reached." (Citations omitted; internal quotation marks omitted.) ConnecticutNational Bank v. Rytman, supra, 12 Conn. L. Rptr. 644. A party CT Page 7569 should not be precluded from litigating an issue where there is a reasonable doubt as to what was decided in the first action. Id., 645.
"Collateral estoppel maybe invoked against a party to a prior adverse proceeding or against those in privity with that party. . . . While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Citations omitted; internal quotation marks omitted.) Id., 303-04. "Whenever collateral estoppel is asserted, but especially in those cases where there is a lack of mutuality or the doctrine of privity is raised, the court must make certain that there was a full and fair opportunity to litigate. The requirement of full and fair litigation ensures fairness, which is a crowning consideration in collateral estoppel cases." (Internal quotation marks omitted.) Id., 306.
Collateral estoppel does not apply to preclude Frenkel from litigating the issue of its alleged nondisclosure of material facts in procuring the insurance policy because it is not clear that this issue is identical to the issue of nondisclosure litigated between Putnam and Pateman in the prior action. Even if the issue of Frenkel's nondisclosure is identical to the issue previously litigated, it would not have been necessary to the judgment inPutnam v. Pateman, and therefore, collateral estoppel does not apply.
In the prior federal action entitled Putnam v. Pateman, the jury found that Pateman was not liable to Putnam because: (1) "plaintiff Putnam has failed to carry its burden of proof," (2) "defendant Pateman has proven its defense of the infidelity exclusion;" and (3) "defendant Pateman has proven its defense of non-disclosure of a material fact." See Jury Interrogatories and Answers, Exhibit B. The jury interrogatories further required that if the jury found that Pateman was not liable to Putnam because Pateman had proven the defense of nondisclosure, that it proceed to determine the issue of Pateman's claim against Frenkel, in Patemanv. Frenkel. See Jury Interrogatories and Answers, Exhibit B. Accordingly, the jury determined that defendant Frenkel was liable to Pateman in the amount of $2 million. CT Page 7570
In denying the motions by Putnam and Frenkel for judgment notwithstanding the verdict or a new trial, the District Court, Boyle, J., stated that the action was brought by Putnam after Pateman, the principal underwriter for Minet, Lloyd's approved broker, denied its claim for insurance coverage after Putnam suffered a loss of gold from a field warehouse. The court further stated that Pateman contended that "no gold was lost, that misrepresentations had been made in the course of obtaining the policy which voided the policy, and that the loss, if any, fell within the unfaithful servant exclusion of the policy." The court also discussed the nature of the claims brought by Pateman. "Pateman counterclaimed for the two million dollars paid to Putnam and brought an action against Frenkel to recover the two million dollars, alleging that Frenkel had failed to disclose material facts with intent to deceive during the contract negotiations."
On appeal, the First Circuit Court of Appeals, affirmed the judgment entered in favor of Pateman in Putnam v. Pateman, solely on the ground of nondisclosure of material facts. The court, however, found "instructional error" in the verdict obtained by Pateman against Frenkel in Pateman v. Frenkel, and therefore vacated the judgment against Frenkel, and remanded the case for a new trial.
A review of the materials provided by the parties does not clearly demonstrate, despite the jury's finding that "Pateman has proven its defense of non-disclosure of a material fact," that the issue of whether Frenkel failed to disclose material facts was actually litigated and resolved in Putnam v. Pateman.[6] See Aetna Casualty Surety v. Jones, supra, 220 Conn. 297; Bertalovitz v.North Part Mortgage Services, Superior Court, judicial district of Danbury, Docket No. 312701 (February 9, 1995, Stodolink, J). It is not clear that the issue of Pateman's defense of nondisclosure of material fact, which was litigated in Putnam v. Pateman, is identical to the issue of nondisclosure by Frenkel in the present action. Furthermore, even if this court determines that the issue of Frenkel's nondisclosure is identical to the issue previously litigated in Putnam v. Pateman, collateral estoppel still does not apply because Pateman could have established its defense of nondisclosure of material fact against Putnam absent the determination of the issue of nondisclosure by Frenkel, therefore, such issue would not have been necessarily determined in the prior proceeding. See Carol Management Corp. v. Board of Tax Review,
supra, 228 Conn. 32-33. Accordingly, Putnam's motion for partial CT Page 7571 summary judgment is denied.
B. Collateral Estoppel as to Putnam
Similarly, Frenkel has moved for summary judgment on all counts of Putnam's complaint on the ground that in the prior federal action the jury determined that Putnam did not prove a loss during the policy period and that the "infidelity exclusion" applied. Frenkel argues that Putnam is collaterally estopped from relitigating these issues because they were already determined. Therefore, Frenkel argues that it is now entitled to summary judgment because "Putnam cannot recover against Frenkel because Putnam was not entitled to recover under the Policy regardless of the conduct of Frenkel. The loss alleged by the plaintiff in this action is not attributable to Frenkel because Putnam did not sustain a loss during the policy period, and because the Policy's infidelity exclusion barred recovery by Putnam under the Policy."
In opposition, Putnam contends that the jury's findings in the federal action, upon which Frenkel relies, were not affirmed on appeal or in conformity with the decision on appeal, and therefore, they have no preclusive effect. Furthermore, Putnam argues that those findings are immaterial in this action against Frenkel because "if Frenkel had disclosed all relevant facts to Lloyd's, Lloyd's would not have accepted Putnam's risk and no policy would issue. In such circumstances, Putnam would never have had its gold at an uninsured location and this loss would never have occurred. Pateman's additional defense to coverage are therefore not relevant in a case against the broker for negligence in obtaining the policy." In response, Frenkel argues that the jury's findings that Putnam failed to prove a loss and that the infidelity exclusion applied were in conformity with the decision of the Court of Appeals, and therefore, they may be relied upon for purposes of collateral estoppel.
The Connecticut Supreme Court has stated that "[i]t is well established that the decision of this court does not make res judicata any issue of fact involved in it; it is the judgment of the tribunal from which an appeal is taken which, if affirmed by us or rendered in conformity to a decision we make, conclusively determines any such issue." (Internal quotation marks omitted.)Laurel, Inc. v. Commissioner of Transportation, 180 Conn. 11, 23,428 A.2d 789 (1980), quoting Osterlund v. State, 135 Conn. 498,502, 66 A.2d 363 (1949); see also Pepin v. City of Danbury,171 Conn. 74, 80, 368 A.2d 88 (1976). Conformity is defined in Black's CT Page 7572 Law Dictionary (6th Ed. 1990) as "[c]orrespondence in form, manner or use; agreement; harmony; congruity."
The Restatement (Second), Judgments 27, comment o (1982), states that "[i]f the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and . . . . [i]f the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination."
As discussed above, the jury in the federal action found that Pateman was not liable to Putnam because (1) Putnam "failed to carry its burden of proof," (2) Pateman proved its defense of the "infidelity exclusion;" and (3) Pateman proved "its defense of nondisclosure of a material fact." In the district court's opinion denying Putnam's and Frenkel's motions for judgment n.o.v. and a new trial, the court stated that "ample evidence supported the jury's verdict that Putnam had failed to prove a loss from the SLT warehouse in July, 1987." The court also found no error in the jury's determination that the infidelity exclusion applied.
The Court of Appeals affirmed the judgment in Putnam v.Pateman, solely on the ground of intentional nondisclosure of material fact. The court stated "Putnam assails the evidence as insufficient to sustain the verdict in Pateman's favor on any basis. Principles of judicial restrain counsel, however, that if determination of an issue effectively disposes of an appeal, the appellate court should resolve the case on that basis without reaching other presented issues. . . . Because our review of the record convinces us that the verdict is fully sustainable on the ground of nondisclosure, we need not consider whether the evidence was also sufficient in respect to agent infidelity and/or nonoccurrence of loss." (Citations omitted.)
The court further stated:
 Putnam briefed and argued several other points. Most of them involved evidentiary issues relating to whether a loss occurred within the policy period. As between Putnam and Pateman, however, the jury verdict is sustainable on an independently sufficient ground: intentional nondisclosure of material CT Page 7573 facts. Thus, we may leave the evidentiary issues to one side, noting only that any irregularity therein could not have tainted the jury's findings on nondisclosure or damages. To the extent that Putnam alludes to other supposed errors, not encompassed within the preceding generality, discussion would serve no useful purpose. Without exception, each such bevue suffers from one or more of the following infirmities: (1) it was not properly preserved at trial, (2) it lacks developed argumentation on appeal, (3) it is subsumed by our discussion of other points, (4) it is an irrelevancy, given our ratio decidendi, and/or (5) it is patently unmeritorious.
The Court of Appeals did not consider the issues of the infidelity exclusion to the policy and Putnam's failure to prove that the loss occurred during the policy period, and therefore, these issues were not conclusively determined for collateral estoppel purposes because they were not affirmed or in conformity with the decision on appeal. See Laurel, Inc. v. Commissioner ofTransportation, supra, 180 Conn. 23; Restatement (Second), Judgments 27, comment o (1982).
Furthermore, with regard to whether Frenkel's ground of appeal affected Putnam's appeal, the Court of Appeals stated "Frenkel's ground of appeal does not affect Putnam's appeal for at least four reasons. . . . The issues, though superficially similar, were actually different. As between Putnam and Pateman, the parties' claims were ex contractu, pitting an insured against its insurer and vice versa. As between Pateman and Frenkel, the cause of action was ex delicto, pitting an insurer against a putative tortfeasor (the insured's broker)"
Later, the Court of Appeals characterized the Pateman v.Frenkel action as follows: "Frenkel, as an agent for a disclosed principal, had neither an entitlement to the benefits of the insurance contract nor any responsibility for its burdens. See
Restatement (Second) Agency § 320 (1958). The action was not a contest between insured and insurer. To the contrary, Pateman's suit sounded in tort, charging deceitful misconduct attributable to one not a party to the insurance contract or otherwise especially beholden to the carrier." CT Page 7574
A perusal of the Court of Appeals opinion reveals that "[a]s between Putnam and Pateman, the jury verdict was free from cognizable error and was dispositive of both the complaint and the counterclaim," which was an action predicated upon an underlying policy. The verdict Pateman obtained against Frenkel, however, was "seriously tarnished by the incidence of instructional error. Consequently, the judgment entered below in Pateman's suit against Frenkel must be vacated and the case remanded for a new trial."
In its motion, Frenkel moves for summary judgment in its favor on all counts on the ground that "[i]t has already been judicially determined that the plaintiff has not sustained any of the damages sought in this action." In the prior federal action, the finding that Putnam "had not sustained any of the damages sought in this action" related only to its action against Pateman which was predicated upon an underlying policy, or, put another way, claims that were "ex contractu." In distinction to the present action, the prior federal action did not involve a tort claim by Putnam against Frenkel. Therefore, a judicial determination in the prior federal action that Putnam did not sustain any of the damages it sought was not a determination predicated upon any tort claim between Putnam and Frenkel that could, in effect, collaterally estop Putnam from pursuing the present action. Accordingly, Frenkel's motion for summary judgment is denied.
2. Legal Insufficiency
As an alternate ground for its motion for summary judgment, Frenkel argues that Putnam's complaint is legally insufficient because it fails to allege that its loss would have been covered under the policy "but for" the conduct of Frenkel.
"Summary judgment is the proper way to test the legal sufficiency of a complaint . . . if the pleadings, affidavits, depositions and any other proof show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Hoey v. Textron, Inc., 9 CSCR 423 (March 17, 1994, Rodriguez, J.), citing Boucher Agency, Inc. v. Zimmer,160 Conn. 404, 409, 279 A.2d 540 (1971); but see Burke v. Avitable,32 Conn. App. 765, 772, 630 A.2d 624 (1993) (stating "[t]he office of motion for summary judgment is not to test the legal sufficiency of the complaint, but is to test for the presence of contested factual issues."). "Summary judgment as a method to test the legal sufficiency of a complaint is available where the standard CT Page 7575 applicable to all cases for summary judgment are met." Hoey v.Textron, Inc., supra, 9 CSCR 423.
As discussed above, genuine issues of material fact exist as to Putnam's claims against Frenkel, and therefore, Frenkel's motion for summary judgment on the ground that Putnam's complaint is legally insufficient is denied.
3. Statute of Limitations
Finally, Frenkel argues that summary judgment should be granted as to Putnam's claim for breach of fiduciary duty because it is barred by the statute of limitations, General Statutes §52-577, as extended by agreement between the parties. The plaintiff argues that its claim is not time barred because: (1) it amended its original complaint to add the claim as of right, pursuant to Practice Book § 175; this court, J. Lewis, has previously decided that Frenkel was estopped from raising the defense of statute of limitations; and Putnam's claim for breach of fiduciary duty arises from the same facts alleged in the original complaint.
Summary judgment may be granted where it is clear that a claim is barred by a statute of limitations. Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984). "Where there is no dispute as to the applicable statute of limitations, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Citations omitted; Internal quotation marks omitted.) Shuster v. Buckley, 5 Conn. App. 473,477, 500 A.2d 240 (1985).
Pursuant to Practice Book § 175, a party may insert new counts into its complaint "which might have been originally inserted therein . . . during the first thirty days after the return day." An amendment to a complaint relates back to the date of the complaint, unless it alleges a new cause of action, in which case it speaks as of the date it was filed. Keenan v. Yale New HavenHospital, 167 Conn. 284, 285, 355 A.2d 253 (1974); Felsted v.Kimberly Auto Services, Inc., 25 Conn. App. 665, 667, 596 A.2d 14
(1991).
The relation back doctrine
 is akin to rule 15(c) of the Federal Rules of Civil Procedure, which provides in CT Page 7576 pertinent part: `(c) RELATION BACK OF AMENDMENTS. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading the amendment relates back to the date of the original pleading. . . . The policy behind rule 15(c) is that a party, once notified of litigation based upon a particular transaction or occurrence, has been provided with all the notice that the statute of limitations are intended to afford. . . . Because rule 15 provides that an amendment relates back to where the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims, is fully served. (Citations omitted; internal quotation marks omitted.)
Gurliacci v. Mayer, 218 Conn. 531, 547, 590 A.2d 914 (1991) (holding that the amendment did relate back because "[t]he new allegations did not inject `two different sets of circumstances and depend on different facts'. . . but rather amplified and expanded upon the previous allegations by setting forth alternate theories of liability." Id., 549); cf. Sharp v. Mitchell, 209 Conn. 59,546 A.2d 846 (1988) (holding that the amendment did not relate back because the amendment and the original complaint involved different sets of circumstances, depended on different bases of liability and the original complaint did not give fair notice of the claim being amended). Furthermore, Connecticut courts "haven given a liberal interpretation to the relation back doctrine." Garthwait v.Chapman, 10 Conn. L. Rptr. 132 (September 30, 1993, Spear, J.).
The parties in the present action entered into an agreement dated April 12, 1990, to "extend, any applicable statute of limitations with respect to any claims that may be asserted by Putnam . . . against Frenkel arising out of Lloyd's Policy No. 2434402 until sixty (60) days after the expiration of the appellate procedure in the First Circuit Court of Appeals." The decision of the Court of Appeals was issued on February 20, 1990. The original complaint in the present action, which alleged claims for breach of contract and negligence, was filed within the sixty day extension CT Page 7577 period on April 16, 1992, and was returnable on May 5, 1992. On June 4, 1992, Putnam amended its claim, as of right pursuant to Practice Book § 175, to further allege claims for violation of the Connecticut Unfair Trade Practices Act (CUTPA) and breach of fiduciary duty.
By decision dated December 30, 1992, this court, J. Lewis, denied Frenkel's motion to dismiss Putnam's CUTPA claim, which was also added by amendment on June 4, 1992, on the ground that the court lacked subject matter jurisdiction because of the expiration of the statute of limitations. The court denied the motion to dismiss on the ground that Frenkel was estopped from asserting that the CUTPA claim was barred by the statute of limitations.
Putnam's claim for breach of fiduciary duty is not barred by the statute of limitations, even though the amendment was filed outside of the sixty day period which extended the statute of limitations period, because the amendment relates back to the original complaint which was timely filed. In its claim for breach of fiduciary duty, Putnam realleges the allegations in its claims for breach of contract and negligence, and adds that Putnam owed Frenkel "a duty of good faith and undivided loyalty" as Frenkel's agent, and that Frenkel breached its fiduciary duty by engaging in the acts previously alleged.
Putnam's claim does not rely on any new facts or circumstances because the duty of good faith and undivided loyalty was implied by the allegations of the original complaint wherein Putnam alleged that: (1) Frenkel was Putnam's and Fundamental's insurance broker from 1983 through the date of the loss; (2) Frenkel acted as Putnam's insurance broker in commencing discussions with Lloyd's and preparing a proposal on behalf of Putnam which was forwarded to Lloyd's; (3) Frenkel was required to exercise due care in securing insurance coverage by providing the full disclosure needed to secure a valid policy; and (4) Frenkel breached its contract with, and duty to Putnam by failing to disclose material facts to Lloyd's, which resulted in the voiding of the policy and denial of Putnam's claim. Putnam's claim for breach of fiduciary duty relates back to the date of the original complaint because it expands upon the previous allegations "by setting forth alternate theories of liability," and does not "inject different sets of circumstances" or "depend on different facts." See Gurliacci v.Mayer, supra, 218 Conn. 549. Accordingly, Frenkel's motion for summary judgment on the ground that Putnam's claim for breach of fiduciary duty is barred by the statute of limitations is denied. CT Page 7578
KARAZIN, J.